IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KARI FORD,<br><br>      Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br><br>      Defendant. | Case No. 2:10-cv-22-SA<br><br><br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is an action filed by Plaintiff, Kari Ford, asking the Court to reverse the final agency decision denying her application for Disability Insurance Benefits (hereafter "DIB") under the Social Security Act. Ms. Ford argues the decision of the Administrative Law Judge (hereafter "ALJ") that Ms. Ford was capable of making a successful adjustment to work that exists in significant numbers in the national economy, and is therefore not disabled, is not supported by substantial evidence and is legally erroneous.

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial

evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (citation omitted), and "requires more than a scintilla but less than a preponderance," *Lax*, 489 F.3d at 1084. The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *See Lax*, 489 F.3d at 1084.

Having carefully considered the parties' arguments, the Court concludes that the ALJ's decision is supported by substantial evidence and is free of reversible legal error.

## Credibility Finding

The Court first turns to Ms. Ford's challenge of the ALJ's finding regarding Ms. Ford's credibility. The ALJ found that Ms. Ford's "allegations [were] somewhat out-of-proportion to the medical findings, and generally not compatible or reasonably consistent with the medical evidence record and all other evidence - and therefore not fully persuasive." (Doc. 6, the certified copy of the transcript of the entire record of the administrative pleadings relating to Kari L. Ford (hereafter Tr. __) 17.) In making this determination, the ALJ set forth the specific evidence he relied on in evaluating Ms. Ford's credibility, including the lack of objective medical evidence to support the degree of impairment alleged, Ms. Ford's daily

2

activities, and the degree of care Ms. Ford has required and with which she has been treated. (Tr. 18-19). *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ said that he made the above-stated determination regarding Ms. Ford's credibility after considering the record as a whole. (Tr. 19.)

The Court has reviewed the parties' arguments and the record and concludes that the ALJ articulated specific, legitimate reasons to support his finding, thus satisfying the criteria to withstand judicial review. *See Qualls*, 206 F.3d at 1372; *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Ms. Ford contests the ALJ's credibility finding by challenging specific findings upon which the ALJ based his credibility finding; however, after carefully reviewing the record, the Court rejects each of those challenges. For example, Ms. Ford disputes the ALJ's finding that "there is essentially no mention of leg elevation or doctor's orders to elevate [Ms. Ford's] legs for her health" (Tr. 16); however, although Ms. Ford sets forth evidence to support that she suffers from edema, the Court's review of Ms. Ford's references to the record uncovered no mention of leg elevation in the record other than Ms. Ford's own testimony.[1] In addition, while Ms. Ford cites to record medical evidence indicating that

---

[1] Ms. Ford cites to Dr. Pugh's opinion that Ms. Ford needs to sit in a recliner or lie down for at least an hour of an eight hour work day (Tr. 605); however, this opinion could be based on one of Ms. Ford's other impairments, and does not specify that this need is based on Ms. Ford's edema.

3

Ms. Ford suffers from edema (which is noted to be only mild[2] or even trace), Dr. Khalaf found "[n]o tremors or LE edema" in Ms. Ford's extremities on September 19, 2008.[3] (Tr. 346-47, 529, 539, 601.)

Another example of a specific argument underlying Ms. Ford's challenge to the ALJ's credibility finding is that the ALJ failed to recognize the limitations and accommodations with which Ms. Ford needed to perform her daily activities; again, based on its careful review of the record, the Court rejects this argument. While Ms. Ford required her husband's assistance to shave her legs and needed to sit on a stool to get dressed, she explained that she required this help because it was difficult to bend over and otherwise did not indicate she usually needed help with showering or dressing. (Tr. 66.) Ms. Ford explained that she disliked going shopping and required her husband or daughter-in-law to accompany her to the grocery store in case she "panicked or something" (Tr. 58) and because she "wouldn't" carry her own groceries[4] (Tr. 58), but did not indicate other significant difficulties with grocery shopping.

---

[2] *See* Doc. 13, at 3 & n. 3 (explaining that "1+ pitting edema" is "mild" edema).

[3] The ALJ also noted that no doctor had ever recommended that Ms. Ford wear support hose. (Tr. 16.)

[4] Further, the ALJ considered Ms. Ford's testimony that she could lift 30 to 40 pounds - which finding Ms. Ford has not contested - in reaching his decision. (Tr. 16.)

4

As the Commissioner set forth in detail in his brief, objective evidence contradicts other claims Ms. Ford made regarding her limitations, including that Ms. Ford could not feel with her upper and lower extremities (Tr. 44, 349-50, 560-64, 613) and that she had neuropathy (Tr. 161, 712). Also, despite her complaints of back pain, Ms. Ford did not attend physical therapy even though her doctor recommended it (Tr. 708). *See Luna v. Bowen*, 834 F.2d 165-66 (10th Cir. 1987).

The Court has also considered Ms. Ford's other arguments challenging the ALJ's credibility finding, and concludes they lack merit. For example, the Court rejects two of those arguments because by November 2008, Ms. Ford's hemoglobin level had returned to 7% (normal for diabetics) (Tr. 709; Doc. 13 n.5), and Ms. Ford has not argued that the ALJ omitted any mental health limitations, making the ALJ's error in that regard harmless, *see Bernal v. Bowen*, 851 F.2d 297, 302-03 (10th Cir. 1988).

In summary, the Court rejects Ms. Ford's challenge to the ALJ's credibility finding and instead concludes the ALJ gave specific and legitimate reasons for his credibility finding, which is supported by such relevant evidence as a reasonable mind might accept as adequate to support the ALJ's finding.

### Rejection of Dr. Pugh's Opinion

Second, the Court has examined Ms. Ford's challenge to the ALJ's evaluation of Dr. Pugh's medical opinion and has concluded

that for the reasons set forth in the Commissioner's brief (Doc. 13, at 13-16), the ALJ adequately addressed Dr. Pugh's opinions and explicitly gave them little weight because they were not well supported by the rest of the record and were inconsistent with Dr. Pugh's own findings and Ms. Ford's daily activities (Tr. 20). *See* 20 C.F.R. § 404.1527(d)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). For example, Dr. Pugh noted that Ms. Ford had "weakness" (Tr. 604, 721); however, every treatment note, including Dr. Pugh's treatment notes, indicated that Ms. Ford had normal motor strength (Tr. 343, 347, 350, 538-39, 564, 612, 698). Also, Dr. Pugh stated that Ms. Ford had diabetic neuropathy (Tr. 604, 722), but the nerve conduction study administered in 2009 concluded that Ms. Ford did not "meet minimal conduction criteria for diabetic polyneuropathy" (Tr. 712.)

Ms. Ford argues that the ALJ's finding is flawed "because the ALJ has failed to cite to the record and has instead just made conclusory statements with no supporting evidence." (Doc. 11, at 16.) While the ALJ's explanation of his finding is not ideal, the ALJ did cite to Dr. Pugh's completed questionnaires at Exhibits 27F (Tr. 603-07) and 31F (Tr. 719-23), and explain that the opinions expressed therein were not well supported by the record and were not consistent with Dr. Pugh's own findings at Exhibits 8F (Tr. 336-52), 21F (Tr. 548-82), and 30F (Tr. 667-718). (Tr. 20.) The ALJ also explained that Dr. Pugh's opinions

6

were not consistent with Ms. Ford's daily activities, which are discussed in the ALJ's opinion.  The Court concludes that, in this case, the ALJ's discussion was sufficient.

In summary, for the reasons set forth in detail in the Commissioner's brief (Doc. 13, at 13-16), the Court rejects Ms. Ford's argument regarding the ALJ's treatment of Dr. Pugh's opinion.

### Commissioner's Subsequent Decision

Finally, Ms. Ford argues that this case must be remanded because the ALJ's decision is inconsistent with the Commissioner's later determination finding Ms. Ford disabled. Ms. Ford attaches a May 14, 2010 decision from the Commissioner that finds Ms. Ford has been disabled since January 2010 (Doc. 11-1), six months after the ALJ in this case found Ms. Ford was not disabled (Tr. 22) and approximately 5-6 weeks after the Appeals Council denied Ms. Ford's request for review in this case (Tr. 1).  Having considered this argument, the Court concludes that Ms. Ford has not met her basic burden to show that the timing of the two claims requires the Court to remand this case.

The only authority to which Ms. Ford cites in support of this argument is the Hearing, Appeals, and Litigation Law Manual (hereafter "HALLEX") 1-5-3-17I(B).  HALLEX 1-5-3-17 gives instructions "for processing subsequent disability claims while a prior claim is pending review at the Appeals Council."  Although Ms. Ford explains the timing of the decisions in this case and

7

Ms. Ford's subsequent successful claim, Ms. Ford does not provide the Court with any information as to whether the Appeals Council issued its decision in this case before Ms. Ford filed her successful subsequent claim.  Although HALLEX suggests that it is the Commissioner's burden to find and review successful subsequent claims to see if they present new and material evidence that may alter the Commissioner's decision in a prior unsuccessful claim, *see* HALLEX 1-5-3-17I(B) & III(A), Ms. Ford at least has the minimal burden to show the Court that her situation matches that addressed by HALLEX 1-5-3-17.  Ms. Ford has failed to meet that minimal burden.  As a result, Ms. Ford has failed to show that HALLEX 1-5-3-17 requires the Court to remand this case.

In summary, the Court rejects each of Ms. Ford's arguments for the reasons set forth above.  The Court emphasizes that despite how sympathetic it is to Ms. Ford's condition, the Court must simply examine whether the ALJ's decision is supported by substantial evidence and free of legal error.  The Court is not authorized to "'reweigh the evidence or substitute [its] judgment for the Commissioner's' . . . [and] may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo.'"  *Lax*, 489 F.3d at 1084 (citations omitted).

Having carefully considered the parties' memoranda and the complete record in this matter, the Court concludes that the ALJ's decision is free of reversible legal error and is supported by such relevant evidence as a reasonable mind might accept as adequate to support the ALJ's conclusion.  As a result, the ALJ's decision is affirmed.  See *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

### ORDER

Based on the above analysis, **IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED** because it is supported by substantial evidence and is free of reversible legal error.

DATED this 30th day of September, 2010.

BY THE COURT:

_____
Samuel Alba
United States Magistrate Judge